## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

Diane Reynolds, *on behalf of herself and all others similarly situated*,

            Plaintiff,

      v.

Athena Bitcoin, Inc.,

            Defendant.

Case No. 8:25-cv-01318-PX

---

## DEFENDANT ATHENA BITCOIN INC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................... 1

PLAINTIFF'S ALLEGATIONS ..................................................................................... 2

LAW AND ARGUMENT ............................................................................................... 3

I.     Standard of Review........................................................................................... 3

II.    Plaintiff Does Not Plead A Viable Claim Under The Maryland Stop Adult
Financial Exploitation (SAFE) Act (Count One)............................................. 3

     A.  Athena Bitcoin was not in a position of "trust and confidence" with respect to
plaintiff, and did not knowingly obtain her funds with the intent to deprive
her of those funds under Md. Code, Est. & Trust § 13-601(e)(1)(i)....................... 4

     B.  Athena Bitcoin did not obtain plaintiff's funds through deception or other
similar conduct with the intent to deprive plaintiff of those funds for the
benefit of another under Md. Code, Est. & Trust § 13-601(e)(1)(ii). .................... 7

III.   Plaintiff Does Not Plead A Viable Negligence Claim (Count Two). ................ 9

     A.  Plaintiff fails to plead that Athena Bitcoin owed her a duty to protect her from
third-party criminals................................................................................ 9

     B.  The Patriot Act does not impose a duty on Athena Bitcoin to prevent fraud. ........... 10

IV.   Plaintiff Does Not A Plead A Viable Products Liability Claim (Count Three)................ 12

     A.  Because Athena Bitcoin is not a "seller" and the kiosks, which operated as
intended, are not personal property, plaintiff cannot state a products
liability claim. ...................................................................................... 12

     B.  Plaintiff fails to plead the existence of any defect that caused her harm. .................. 13

     C.  Plaintiff's product liabilities claim is barred by the economic loss rule..................... 14

V.    Plaintiff Does Not Plead A Viable Claim Under The Maryland Consumer
Protection Act ("MCPA") (Count Four)............................................................. 15

VI.   Plaintiff Does Not Plead A Viable Claim For Declaratory And Injunctive Relief
(Count Five). ...................................................................................................... 17

CONCLUSION................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A Society Without A Name v. Virginia*,
    655 F.3d 342 (4th Cir. 2011) ...................................................3

*In re Agape Litig.*,
    681 F. Supp. 2d 352 (E.D.N.Y. 2010) ...................................11

*Armstrong v. Am. Pallet Leasing Inc.*,
    678 F. Supp. 2d 827 (N.D. Iowa 2009).................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................3

*Ayres v. PHH Mortgage Corp.*,
    2020 WL 3498158 (D. Md. June 29, 2020)...........................17

*Barclay v. Briscoe*,
    47 A.3d 560 (Md. 2012) ........................................................10

*Bazemore v. Best Buy*,
    957 F.3d 195 (4th Cir. 2000) ..................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................3

*Birch v. Amazon.com Servs. LLC*,
    2025 WL 26665 (D. Md. Jan. 3, 2025) .................................12

*Blackburn Ltd. P'ship v. Paul*,
    90 A.3d 464 (Md. 2014) ........................................................11

*Chubb & Son v. C & C Complete Servs., LLC*,
    2013 WL 336718 (D. Md. Jan. 23, 2013)..............................15

*Comptroller of Maryland v. Broadway Servs., Inc.*,
    248 A.3d 1117 (2021), *aff'd*, 478 Md. 200, 272 A.3d 800 (2022)............................5

*Doe v. Salisbury Univ.*,
    123 F. Supp. 3d 748 (D. Md. 2015).......................................17

*Erie Ins. Co. v. Amazon.com, Inc.*,
    925 F.3d 135 (4th Cir. 2019) .................................................12

*Evans v. United States*,
    105 F.4th 6060 (4th Cir. 2024) ..................................................................... 3

*Hamilton v. McAuliffe*,
    277 Md. 336 (1976) ................................................................................... 17

*Kent Grp. Partners, LLC v. Citizens Bank, N.A.*,
    688 F. Supp. 3d 608 (N.D. Ohio 2023) ...................................................... 11

*Kiriakos v. Phillips*,
    139 A.3d 1006 (Md. 2016) ......................................................................... 11

*Lamb v. Hopkins*,
    492 A.2d 1297 (1985) ................................................................................ 10

*McKinney v. Fulton Bank*,
    776 F. Supp. 2d 97 (D. Md. 2010) .......................................................... 8, 15

*Morris v. Osmose Wood Preserving*,
    667 A.2d 624 (Md. 1995) ........................................................................... 14

*Pacific Indem. Co. v. Whaley*,
    572 F. Supp. 2d 626 (D. Md. 2008) ........................................................... 14

*Pendleton v. State*,
    921 A.2d 196 (Md. 2007) ............................................................................. 9

*Phipps v. General Motors Corp.*,
    363 A.2d 955 (Md. 1976) ........................................................................... 13

*Spitzer Mgmt., Inc. v. Interactive Brokers, LLC*,
    2013 WL 6827945 (N.D. Ohio Dec. 20, 2013) ......................................... 11

*Stanley Martin Cos., Inc. v. Universal Forest Prods. Shoffner LLC*,
    396 F. Supp. 2d 606 (D. Md. 2005) ........................................................... 13

*Valentine v. On Target, Inc.*,
    727 A.2d 947 (Md. 1999) ............................................................................. 9

*Warr v. JMGM Group, LLC*,
    70 A.3d 347 (Md. 2013) .......................................................................... 9, 10

*Washington County Bd. of Educ. v. Mallinckrodt ARD, Inc.*,
    431 F. Supp. 3d 698 (D. Md. 2020) ....................................................... 15, 16

**Statutes**

Maryland Consumer Protection Act, Md. Code, Com. Law § 13-101, *et seq.* ........................15, 16

Maryland's SAFE Act, Md. Code, Est. & Trust § 13-601, *et seq.* .........................3, 4, 5, 6, 7, 8, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................17

Fed. R. Civ. P. 9(b) ....................................................................................................8, 15

## INTRODUCTION

Defendant Athena Bitcoin operates automated kiosks that perform a simple service: they convert a customer's cash into cryptocurrency, then route that cryptocurrency into a digital wallet that the customer identifies. Plaintiff used one of Athena Bitcoin's kiosks for exactly that purpose, and it performed as advertised—it accepted plaintiff's cash, converted it into Bitcoin, and sent it to the digital wallet that plaintiff provided.

Unfortunately, however, the digital wallet plaintiff identified belonged to a scammer. As plaintiff recounts in her Complaint, the scammer posed as a representative from her bank, convinced her that her account was at risk, instructed her to withdraw $13,000 in cash, and directed her to convert it to Bitcoin and deposit the Bitcoin into the scammer's digital wallet.

Not only did Athena Bitcoin play no part in that fraudulent scheme, it *expressly warns* consumers, including plaintiff, about these types of scams. In fact, this fraud could only have happened if plaintiff checked a box during her use of the kiosk stating: "the crypto address shown above was generated by myself in a wallet app or service account that I created for myself."

But even accepting plaintiff's version of the story, her claims fail to get out of the starting blocks. Plaintiff cannot state a claim under Maryland's SAFE Act (Count One) because the parties are not in a relationship of confidence and trust, Athena Bitcoin did not obtained plaintiff's money through fraud or deceit, and did not intend to deprive her of money for the benefit of the scammers. Plaintiff's negligence claim (Count Two) similarly fails because Maryland law does not recognize a duty to prevent plaintiff from being defrauded by third-party criminals. Plaintiff's products liability claim (Count Three) fails because Athena Bitcoin is not a "seller" and its kiosks are not "products," and is barred by the economic loss rule in any event. Finally, Plaintiff's Maryland Consumer Protection Act fails because plaintiff has not plausibly alleged a deceptive practice, and

plaintiff's factual allegations establish that plaintiff did not rely on Athena Bitcoin when she used its kiosks anyway.

Because the Complaint fails to allege any conduct by Athena Bitcoin that gives rise to legal liability, all plaintiff's claims should be dismissed with prejudice.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that she was the target and victim of a "Bitcoin ATM Scam" perpetrated on her by an unknown criminal third party. (Compl. ¶¶ 59-69.) More specifically, plaintiff alleges that on July 29, 2024, after finding an alert on her computer, she called a telephone number allegedly associated with Apple and spoke to a person that told her hackers were accessing her computer. (*Id.* ¶ 62.) That person asked plaintiff where she banked, and when she said Wells Fargo, the fraudster claimed to transfer her to a Wells Fargo representative. (*Id.*) That scammer told plaintiff the alleged hackers were planning to take money from her account, and she needed to withdraw her money and place it in a Bitcoin kiosk before they did. (*Id.* ¶ 63.)

Plaintiff did just that. She withdrew $13,000 from her bank account, purchased Bitcoin at an Athena Bitcoin kiosk with that cash, and sent the Bitcoin to a QR code connected to the scammer's wallet, which was sent to plaintiff by the scammer. (*Id.* ¶¶ 64-67.) After the initial purchase, the scammers continued to call and text plaintiff to try to convince her to withdraw more money. (*Id.* ¶ 68.) The subsequent calls and text alarmed plaintiff, and the next day, July 30, 2024, plaintiff received a fraud alert from Wells Fargo and filed a police report with the Montgomery County Police Department, detailing the fraud. (*Id.* ¶¶ 68-69.)

Plaintiff does not allege that Athena Bitcoin was the scammer or that it had any relation to the scammers—nor could she. The sole alleged involvement by Athena Bitcoin is that it operated the kiosk that plaintiff used. (*Id.* ¶¶ 29, 33, 46.) Based on these facts—that plaintiff was scammed by unknown criminals and that she used Athena Bitcoin's regulated kiosk to send them Bitcoin—

plaintiff filed suit against Athena Bitcoin and Genesis Coin, Inc., the alleged manufacturer of the kiosks, who plaintiff has since voluntarily dismissed. (*See generally* Compl.) As explained below, plaintiff has failed to state a claim for relief against Athena Bitcoin under any of her claims, and thus her complaint should be dismissed.

## LAW AND ARGUMENT

### I.    Standard of Review.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 577 (2007)). "To demonstrate plausibility, the complaint must plead facts beyond those that are 'merely consistent with a defendant's liability.'" *Evans v. United States*, 105 F.4th 6060, 616 (4th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "[A]n unadorned, the-defendant-unlawfully-harmed me accusation" is insufficient. *Twombly*, 550 U.S. at 555, 557. The complaint must "'raise a right to relief above the speculative level, thereby nudging the claims across the line from conceivable to plausible.'" *Evans*, 105 F.4th at 616 (quoting *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2000)). To determine whether a complaint meets the standard, a court must "separat[e] the legal conclusions from the factual allegations, assum[e] the truth of only the factual allegations, and then determin[e] whether those allegations allow a court to reasonably infer that 'the defendant is liable for the misconduct alleged." *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

### II.    Plaintiff Does Not Plead A Viable Claim Under The Maryland Stop Adult Financial Exploitation (SAFE) Act (Count One).

Maryland's SAFE Act creates a private right of action against any "person who has committed financial exploitation against [an] older adult"—defined to include all adults over age 68. Md. Code, Est. & Trust §§ 13-604; 13-601.

Plaintiff alleges that Athena Bitcoin breached the SAFE Act in two ways: first, plaintiff alleges that Athena Bitcoin was in a position of trust and confidence with respect to plaintiff, and knowingly obtained her funds with the intent to deprive her of those funds in an unfair or unreasonable manner under Md. Code, Est. & Trust § 13-601(e)(1)(i); and second, plaintiff claims that Athena Bitcoin intentionally deprived her of her funds through deception or fraud under Md. Code, Est. & Trust § 13-601(e)(1)(ii). Neither claim is supported by the allegations in plaintiff's complaint, for the reasons discussed below. Accordingly, the Court should dismiss Count One.

### A.    Athena Bitcoin was not in a position of "trust and confidence" with respect to plaintiff, and did not knowingly obtain her funds with the intent to deprive her of those funds under Md. Code, Est. & Trust § 13-601(e)(1)(i).

Plaintiff first alleges that Athena Bitcoin committed "financial exploitation" under the SAFE Act because Athena Bitcoin purportedly: (i) "stood in a position of trust and confidence" with respect to Plaintiff; (ii) "knowingly obtained money from Plaintiff . . . with the intent to deprive" plaintiff of those funds for the benefit of someone other than plaintiff; and (iii) did so in a manner that "is neither fair nor reasonable." (Compl. ¶¶ 86-91); Md. Code, Est. & Trust § 13-601(e)(1)(i). But plaintiff's factual allegations do not support such a claim, for at least two reasons.

### 1.    Athena Bitcoin is not in a position of trust and confidence with respect to plaintiff.

First, the Complaint does not adequately allege that Athena Bitcoin was in a "position of trust and confidence" with plaintiff, as required to establish "financial exploitation" under the first subsection of Md. Code Est. & Trust § 13-601(e)(1). The SAFE Act defines "position of trust and confidence" as "a relationship, whether formed by a formal or informal agreement . . . in which: (1) A person is entrusted with the use or management" of an older adult's property or assets, or "(2) There is a special confidence or trust placed in a person who, in equity and good conscience,

is bound to act in good faith and with due regard to the interests" of the older adult. Md. Code, Est. & Trust § 13-601(j).

Plaintiff alleges that her relationship with Athena Bitcoin meets this definition because "their relationship was formed by a formal agreement" when she consented to "Athena's Terms of Service," and because Athena Bitcoin is generally (although not specific to plaintiff) "entrusted with the use of older adult's (sic) assets because older adults insert their cash into the machines with the belief that the money will be protected by the owners of the machines." (Compl. ¶ 88.)

But that is not what Athena Bitcoin's kiosks do, as plaintiff admits. Athena does not deposit or take custody of customer funds—instead, its kiosks simply "allow customers to exchange their physical currency for cryptocurrency," which is then routed to a digital wallet *specified by the customer*. (Compl. ¶¶ 34, 45, 67.) Thus, Athena Bitcoin does not "use" or "manage" customers' money as required to establish a relationship of "trust and confidence" under the SAFE Act.

Nor does Athena Bitcoin otherwise enter into a confidential or fiduciary relationship with its customers merely because it requires them to consent to Terms of Service. Plaintiff's argument seems to assume that *every* contractual relationship then qualifies as a confidential or fiduciary relationship under the statute, which is not the case.

Plaintiff's conclusory allegations notwithstanding, an arm's-length contractual relationship such as the one between Athena Bitcoin and the plaintiff here does not create a confidential relationship under Maryland law. *See generally Comptroller of Maryland v. Broadway Servs., Inc.*, 248 A.3d 1117, 1128–30 (Md. 2021) (noting that purchaser-supplier relationships, landlord-tenant relationships, and lender-borrower relationships are generally not considered "confidential relationships" under Maryland law), *aff'd*, 478 Md. 200, 272 A.3d 800 (2022). To create such a relationship, "certain factors above and beyond a typical business relationship must exist"; merely

5

"trusting and relying on the other party to perform its side of the transaction is not enough; rather, something apart from the transaction itself is required to create a confidential relationship." *Id.* (quotations omitted).

Here, plaintiff alleges that her relationship with Athena Bitcoin is governed by Athena Bitcoin's Terms of Service, yet points to nothing in those terms (or otherwise) that would establish a relationship beyond a "typical business relationship" between a customer and service provider. *Id.* Nor does Athena Bitcoin provide any ongoing management or custodial services to its customers that would give rise to such a relationship—such as establishing an account or holding the converted funds for the customers' benefit. Athena Bitcoin merely provides a one-off service—conversion of cash to cryptocurrency—and does so on an arm's-length basis to any person who chooses to use its kiosks and agree to its Terms of Service. (*See* Compl. ¶¶ 34, 41-45.) That ordinary business relationship is not one of "trust and confidence" under Maryland law.

For these reasons, plaintiff fails to adequately allege "financial exploitation" under Section 13-601(e)(1)(i) of the SAFE Act, and thus her SAFE Act claim fails.

**2.    Athena Bitcoin did not knowingly obtain plaintiff's money with the intent to deprive her of funds for the benefit of the scammers.**

Plaintiff also fails to plausibly allege the second element of financial exploitation under Md. Code, Est. & Trust § 13-601(e)(1)(i)—namely, that Athena Bitcoin knowingly obtained her money with the intent to deprive her of that money for the benefit of scammers.

As an initial matter, Athena Bitcoin itself never "obtained" plaintiff's money at all—it merely *converted* one form of currency to another, and deposited the converted cryptocurrency into the digital wallet of plaintiff's choosing (which, unfortunately, happened to be the wallet belonging to the scammer).

Nor has plaintiff plausibly alleged that in this instance, Athena Bitcoin *specifically intended* to deprive this plaintiff of her money for the benefit of an unknown scammer.

Not only does plaintiff fail to allege that Athena Bitcoin was aware of this particular ongoing fraud and intended to have it succeed, plaintiff specifically alleges that Athena Bitcoin *warns* customers about such scams in an effort to *prevent* them—both in its Terms of Service and in a section of its website titled "Avoid these Bitcoin Scams." (Compl. ¶¶ 49-50, 124.) That website attempts to educate consumers and the public about "[f]inancial scams involving digital currencies like Bitcoin." (*Id.* ¶¶ 49-50 (screenshot of Athena Bitcoin website warning that it "receives numerous reports of fraud per month, so we want to share much of what we've learned to look out for when it comes to Bitcoin.").) Plaintiff further alleges that Athena Bitcoin has expressed concern that ongoing fraud schemes could shake the public's confidence in the security of cryptocurrency more broadly, and thereby hurt its business. (*Id.* ¶ 48)

In short, there is no factual support at all for the allegation that Athena Bitcoin processed this transaction (through one of its automated kiosks no less) with the specific intent to deprive this plaintiff of her funds for the benefit of the scammers who stole her money. For that reason, plaintiff's claim for breach of Section 13-601(e)(1)(i) of the SAFE Act fails.

**B.    Athena Bitcoin did not obtain plaintiff's funds through deception or other similar conduct with the intent to deprive plaintiff of those funds for the benefit of another under Md. Code, Est. & Trust § 13-601(e)(1)(ii).**

Plaintiff also fails to adequately allege that Athena Bitcoin committed "financial exploitation" by intentionally depriving her of her funds through deception or fraud under Md. Code, Est. & Trust § 13-601(e)(1)(ii)—the second basis for her SAFE Act claim. Specifically, plaintiff alleges that Athena Bitcoin "used deception, false pretenses, false promises, and similar actions and tactics to obtain older adult's (sic) funds with the intent to permanently deprive them of the funds for the benefit of the fraudsters." (Compl. ¶ 93.) But plaintiff fails to allege any facts

7

in support of that conclusory recitation of the statute that would give rise to a plausible claim for relief.

### 1. Plaintiff fails to identify any deceptive or fraudulent act committed by Athena Bitcoin.

First, aside from a conclusory allegation that Athena Bitcoin "used deception, false pretenses, false promises, and similar actions and tactics," plaintiff fails to allege any specific conduct that she claims Athena Bitcoin engaged in that would fall within those categories—let alone with the requisite particularity required for fraud-based claims under Rule 9(b). *See, e.g., McKinney v. Fulton Bank*, 776 F. Supp. 2d 97, 104 (D. Md. 2010).

At most, plaintiff claims that Athena Bitcoin could have done more to prevent the type of fraud that she experienced. But the fraud itself was not committed by Athena Bitcoin. The only fraud or deception alleged here was committed by unknown scammers who induced plaintiff to withdraw cash from her bank account, convert it to cryptocurrency, and deposit it in their digital wallet. (Compl. ¶¶ 67, 89.) Thus, plaintiff's claim under Section 13-601(e)(1)(ii) of the SAFE Act fails.

### 2. Plaintiff fails to plausibly allege that Athena Bitcoin acted with the intent to deprive her of funds for the benefit of unknown fraudsters.

Second, as discussed above in Section II.A.2, plaintiff fails to plausibly allege that Athena Bitcoin specifically intended to deprive her of her funds for the benefit of the unidentified scammers who defrauded her. Plaintiff alleges no facts to support the conclusion that Athena Bitcoin was even *aware* she was being defrauded (nor could she, given that her only interaction with Athena Bitcoin was through an automated kiosk). Nor does her complaint support the conclusion that, even *if* it was aware of the fraud, Athena Bitcoin *intended* it to succeed, given that Athena Bitcoin specifically warns customers about similar schemes in an effort to prevent them,

and has expressed concern over the prevalence of such frauds leading to an overall decline in its business.

Thus, for this reason as well, plaintiff's claim for breach of Section 13-601(e)(1)(ii) of the SAFE Act fails.

### III.    Plaintiff Does Not Plead A Viable Negligence Claim (Count Two).

To state a negligence claim against Athena Bitcoin, plaintiff must allege that Athena Bitcoin owed her a duty, it breached that duty, and plaintiff suffered actual injury proximately caused by Athena Bitcoin's breach. *Valentine v. On Target, Inc.*, 727 A.2d 947, 949 (Md. 1999). "Vital to sustaining a cause of action in negligence is the existence of a legally recognized duty owed by the defendant to the particular plaintiff." *Warr v. JMGM Group, LLC*, 70 A.3d 347, 353 (Md. 2013). "Whether a legal duty exists is a question of law, to be decided by the court." *Pendleton v. State*, 921 A.2d 196, 204 (Md. 2007). Because plaintiff does not plead a cognizable duty to protect her from third-party scammers, her negligence claim fails as a matter of law.

### A.    Plaintiff fails to plead that Athena Bitcoin owed her a duty to protect her from third-party criminals.

Plaintiff first claims that Athena Bitcoin "failed to prevent, intercept, and/or mitigate the elder financial scams involving Athena ATMs" like the one allegedly perpetrated on plaintiff. (Compl. ¶ 22; *see also id.* ¶ 102 (describing duty as "to take reasonable steps to prevent the financial exploitation of older adults taking place at Athena ATMs."), *id.* ¶ 106 ("Defendants breached their duties to Plaintiff and the Class by negligently, recklessly, and knowingly failing to implement checks and procedures both at Athena ATMs and internally that would effectively intervene, mitigate, or deter the use of Athena ATMs in scams such as the one in this case.").) In short, plaintiff alleges that Athena Bitcoin had a legal duty to prevent third-party criminals from committing fraud against her. But Maryland law does not recognize such a duty.

In Maryland, "the general rule is that there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists between the actor and the third person or between the actor and the person injured." *Warr v JMGM Grp., LLC*, 70 A.3d 347, 355 (Md. 2013) (quotation and citation omitted) ("In the absence of control, our jurisprudence is replete with holdings that, regardless of any foreseeability, a duty does not exist to the general public, with respect to harm caused by a third party, absent the existence of a special relationship between the person sued and the injured party or the person sued and the third party."). Thus, "in the absence of control or a special relationship, there can be no duty to an injured person for harm caused by a third party." *Id.*; *see also Barclay v. Briscoe*, 47 A.3d 560, 575 (Md. 2012) (quoting *Lamb v. Hopkins*, 492 A.2d 1297, 1300 (1985)) ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not itself impose upon him a duty to take such action.").

No such special relationship exists here. In fact, the *only* relationships "that give rise to such a duty" under Maryland law "are set forth in Restatement §§ 316-19"—(1) parent and minor child, (2) master and servant, (3) possessor of land/chattels and licensee, and (4) one who takes control of a person with known dangerous propensities. *Lamb*, 492 A.2d at 1301.

Plaintiff's relationship to Athena Bitcoin does not fit within any of those four categories. As a result, Athena Bitcoin did not owe plaintiff a duty of care to prevent her from being defrauded by third-party criminals, and her negligence claim fails as a matter of law.

### B.  The Patriot Act does not impose a duty on Athena Bitcoin to prevent fraud.

Plaintiff next argues that an uncited section of the Patriot Act created a duty on Athena Bitcoin to prevent her from being defrauded. (Compl. ¶ 103.) Again, she is wrong.

Maryland courts have explained "that a statute or ordinance can prescribe a duty" under Maryland's Statute or Ordinance Rule *only if* the Plaintiff can: "'(1) show the violation of a statute

or ordinance designed to protect a specific class of persons, and (2) the violation proximately caused the injury complained of.'" *Kiriakos v. Phillips*, 139 A.3d 1006, 1016 (Md. 2016) (quoting *Blackburn Ltd. P'ship v. Paul*, 90 A.3d 464 (Md. 2014)). Plaintiff has failed to meet either of those prerequisites.

First, plaintiff does not even identify the statute she allegedly believes imposes a duty upon Athena Bitcoin. She merely includes a general reference to the Patriot Act—a 132-page national security statute. (Compl. ¶ 103.) Nor does plaintiff plead in any manner how Athena Bitcoin allegedly violated that statute, or how that violation caused her alleged injury. Plaintiff's vague references to the Patriot Act, without identifying any specific provision or articulating a legal duty arising from it, are insufficient to state a claim, and she fails to plausibly plead the prerequisites under the Maryland Statute or Ordinance Rule.

Moreover, courts have repeatedly rejected claims that even specific provisions of the Patriot Act create a duty sufficient to support an individual negligence claim. *See, e.g.*, *Kent Grp. Partners, LLC v. Citizens Bank, N.A.*, 688 F. Supp. 3d 608, 615-16 (N.D. Ohio 2023) (holding Patriot Act did not create a duty flowing from bank to victim of wire fraud; "[N]either the Bank Secrecy Act [amended by the Patriot Act] nor the Patriot Act create a legal duty flowing to those victimized by fraudulent account holders. Rather, those statutes create a duty flowing from banks to the government."); *In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("[B]ecause the Bank Secrecy Act does not create a private right of action, the Court can perceive no sound reason to recognize a duty of care that is predicated upon the statute's monitoring requirements"); *Spitzer Mgmt., Inc. v. Interactive Brokers, LLC*, 2013 WL 6827945, at *2-3 (N.D. Ohio Dec. 20, 2013) (explaining the obligations under the Patriot Act flow from financial institutions to the

government and finding no duty to plaintiff under the Act) (listing cases); *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 874 (N.D. Iowa 2009) (same).

Because Athena Bitcoin had no duty to prevent plaintiff from being defrauded by a third-party, the Court should dismiss Count Two for failure to state a claim.

## IV.    Plaintiff Does Not A Plead A Viable Products Liability Claim (Count Three).

### A.    Because Athena Bitcoin is not a "seller" and the kiosks, which operated as intended, are not personal property, plaintiff cannot state a products liability claim.

"Maryland law is clear that a party may only be held liable in products liability if they are a seller" of the product in question—that is, "owners of personal property who transfer title to purchasers of that property for a price." *Birch v. Amazon.com Servs. LLC*, 2025 WL 26665, at *3 (D. Md. Jan. 3, 2025) (citing *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 141 (4th Cir. 2019) ("[P]roducts liability under Maryland law, whether asserted under theories of negligence, breach of warranty, or strict liability in tort, is imposed on sellers and manufacturers (a manufacturer also being a seller).")). "In other words, only a party who holds or transfers title of a product for a price may be liable for its defects under Maryland law." *Birch*, 2025 WL 26665, at *2  (dismissing products liability claim and finding amendment would be futile since defendant was not the seller of the product at issue). Because plaintiff does not and cannot plead that Athena Bitcoin is a "seller" under Maryland law, its product liability claim fails.

Plaintiff's only attempt to do so is a single, conclusory statement that "Defendants are manufacturers of a defective product"—although what "product" that is, she does not say. (Compl. ¶ 110). In any event, plaintiff's factual allegations—as opposed to legal conclusions—make clear that Athena Bitcoin is merely a service provider, not a manufacturer or seller of kiosks (or any other product), and that, in fact, Athena Bitcoin purchased the kiosks at issue from a *different* manufacturer, Genesis Coin, Inc. (Compl. ¶¶ 33-34 ("Athena operates more than 3,000 ATMs"

that "allow customers to exchange their physical currency for cryptocurrency or other digital assets."); *id.* ¶ 40 ("Athena purchased its ATMs from Genesis.").

Plaintiff also does not allege that Athena's Bitcoin kiosks are personal property that it transferred to a purchaser for a price—a necessary element of a product liability claim under Maryland law. To the contrary, plaintiff alleges that Athena Bitcoin places kiosks into stores where a customer may go and use their services. (Compl. ¶¶ 34-36, 39, 44-46 (explaining that kiosks, which are located in service stations and convenience stores, permit customers to purchase cryptocurrency by using an Athena Bitcoin kiosk). Because Athena Bitcoin does not manufacture, sell, or otherwise transfer ownership of the kiosks (or anything else for that matter), plaintiff's products liability claims fail as a matter of law.

### B.    Plaintiff fails to plead the existence of any defect that caused her harm.

Plaintiff has also failed to plausibly plead the existence of a defect in any product that supposedly caused her to fall victim to the alleged fraud. To maintain a products liability claim under any theory requires plaintiff to plead "(1) the existence of a defect; (2) the attribution of the defect to the seller; and (3) a causal relationship between the defect and the injury." *Stanley Martin Cos., Inc. v. Universal Forest Prods. Shoffner LLC*, 396 F. Supp. 2d 606, 618-19 (D. Md. 2005); *see also Phipps v. General Motors Corp.*, 363 A.2d 955, 959 (Md. 1976).

But plaintiff's allegations identify no design or manufacturing defect in Athena Bitcoin's kiosks. In fact, plaintiff's allegations make clear that the kiosk she used did exactly what it was intended to do—exchange physical currency into crypto assets and direct those crypto assets into a digital wallet identified by the user. (*See* Compl. ¶ 16 (explaining the purpose of the kiosks is to "allow customers to exchange their physical currency for cryptocurrency or other digital assets.").)

13

The fact that plaintiff was duped by third-party criminals into identifying a digital wallet that did not belong to her, but instead belonged to the fraudsters, does not reflect a defect in the kiosk any more than using gasoline to douse a kitchen fire would reflect "defect" in the fuel.

Plaintiff's allegations make clear that the cause of her injury was the unfortunate fraud perpetrated by third-party criminals who directed her to withdraw money from her bank, purchase cryptocurrency, and send that cryptocurrency to the fraudsters. (Compl. ¶¶ 59-67.) As a result, her complaint does not plausibly allege either a defect or, for that matter, a causal link between the operation of Athena Bitcoin's kiosks and her resulting injuries.

Accordingly, plaintiff's products liability claim should be dismissed.

### C.    Plaintiff's product liabilities claim is barred by the economic loss rule.

Plaintiff's products liability claim fails for a third reason as well: it is barred by Maryland's economic loss rule.

"[I]n order to assert a cognizable products liability theory of recovery, an action sounding in tort, but one premised on economic loss alone, the plaintiff must allege facts that demonstrate that the product at issue creates a *dangerous condition*, one that gives rise to a *clear danger of death or personal injury*." *Lloyd v. General Motors Corp.*, at 124 (emphasis in original). Where a plaintiff alleges "purely economic losses—losses that involve neither a clear danger of physical injury or death, nor damage to the property other than the product itself,'" the product liability claim is barred. *Pacific Indem. Co. v. Whaley*, 572 F. Supp. 2d 626, 628 (D. Md. 2008) (quoting *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 630 (Md. 1995)); *see also Bryant*, 627 F. Supp. 3d at 476-77 (dismissing products liability claims because plaintiff had not plausibly alleged that the defect caused serious risk of personal injury or death).

Plaintiff's only damages here are economic—namely, the loss of $13,000 she converted to Bitcoin and sent to the fraudsters, which she frames as "loss of title to cash assets deposited in the

machines." (Compl. ¶¶ 59-67, 117.) And plaintiff does not allege—even in conclusory fashion—that any defect with the kiosks caused any danger of personal injury or death. Thus, plaintiff's products liability claim is barred by the economic loss rule, and should be dismissed for that reason as well.

**V.    Plaintiff Does Not Plead A Viable Claim Under The Maryland Consumer Protection Act ("MCPA") (Count Four).**

To assert an MPCA claim, plaintiff "must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) cause[d her] actual injury," and must do so with particularity under Rule 9(b). *Washington County Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 710 (D. Md. 2020) (quotation omitted); *McKinney v. Fulton Bank*, 776 F. Supp. 2d 97, 104 (D. Md. 2010). "The circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Chubb & Son v. C & C Complete Servs., LLC*, 2013 WL 336718, at *3 (D. Md. Jan. 23, 2013).

The MCPA lists fourteen categories of unfair or deceptive trade practices, including (i) false or misleading statements that have the tendency to or effect of deceiving consumers and (ii) "[f]ailure to state a material fact if the failure deceives or tends to deceive." Md. Code. Ann., Com. Law § 13-301(1), (3). Plaintiff fails to allege either.

First, plaintiff fails to allege any false representation made by Athena Bitcoin—let alone the time, place, or contents of such a representation—or that she relied on any misrepresentation *from Athena Bitcoin* when following the instructions of the scammers to convert her cash to cryptocurrency and transfer it to the digital wallet they selected.

To the contrary, plaintiff's complaint makes clear that she used Athena Bitcoin's kiosks in reliance on the calls she received from criminal scammers, who in turn represented to plaintiff that

doing so would encrypt and protect her money. (Compl. ¶ 63.) She does not allege that she spoke to anyone from Athena Bitcoin or read anything published by Athena Bitcoin—let alone that she received a representation that was false and on which she relied. *See Bryant*, 627 F. Supp. 3d at 479-79 ("[T]he deceptive trade practice must occur in the sale or offer of sale to the consumer."). Because plaintiff has not plausibly alleged a misrepresentation that she relied on in using Athena Bitcoin's kiosks, she cannot state a claim under the MCPA. *See id.* (dismissing MCPA claim with prejudice because the complaint "fails to provide more than recitation of the elements of a claim under MCPA."); *Bezmenova*, 2013 WL 3863948, at *5 (finding MCPA claim fails as a matter of law because plaintiff's vague allegations were not pleaded with particularity and did not "support a plausible inference that the statement induced the plaintiff to make a harmful consumer choice.").

Plaintiff's attempt at pleading an actionable omission fares no better. "An actionable omission under the MCPA typically occurs when an entity fails to disclose a business practice, or an aspect of a business practice, to a misleading effect." *Washington County Bd. of Educ.*, 431 F. Supp. 3d at 710. Here, plaintiff claims that Athena Bitcoin failed to provide material facts to consumers that criminals used its kiosks in financial scams. (Compl. ¶¶ 124-126.)

But that claim plainly contradicts the factual allegations in plaintiff's complaint, where she specifically alleges that Athena Bitcoin includes warnings about scams involving its kiosks in its Terms of Service and has an entire section of its website titled "Avoid these Bitcoin Scams," which is dedicated to educating consumers and the public about "[f]inancial scams involving digital currencies like Bitcoin." (Compl. ¶¶ 124, 49-50 (screenshot of Athena Bitcoin website warning that it "receives numerous reports of fraud per month, so we want to share much of what we've learned to look out for when it comes to Bitcoin.").) And again, given that plaintiff was on the phone with the scammers and following their instructions (despite the warnings she received from

16

Athena Bitcoin's Terms of Service), she cannot plausibly allege that the existence of further warnings would have deterred her from continuing to adhere to the instructions she was given by the scammers.

Accordingly, because plaintiff fails to adequately plead a misrepresentation, omission, or reliance, plaintiff's MCPA claim should be dismissed.

## VI.  Plaintiff Does Not Plead A Viable Claim For Declaratory And Injunctive Relief (Count Five).

"'The existence of a justiciable controversy is a prerequisite to the maintenance of a declaratory judgment in Maryland,' and that process 'is not available to decide purely theoretical questions or questions that may never arise.'" *Ayres v. PHH Mortgage Corp.*, 2020 WL 3498158, at *10 (D. Md. June 29, 2020) (quoting *Hamilton v. McAuliffe*, 277 Md. 336, 339-40 (1976)). Moreover "a claim for injunctive relief is not a standalone cause of action"—it is merely a remedy. *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 770 (D. Md. 2015). Because each of plaintiff's four substantive claims should be dismissed, "there is no basis upon which declaratory or injunctive relief could be granted," and Count Five should be dismissed. *Ayres*, 2020 WL 3498158, at *10.

## CONCLUSION

For the above reasons, Athena Bitcoin respectfully requests this Court dismiss all claims against it pursuant Fed. R. Civ. P. 12(b)(6) with prejudice.


Dated:  May 23, 2025

Respectfully submitted,

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully, 27402
BAKER & HOSTETLER LLP

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500
F: (202) 861-1783


Terry Brennan (pro hac vice)
tbrennan@bakerlaw.com
Sam A. Camardo (pro hac vice)
scamardo@bakerlaw.com
Daniel M. Kavouras (pro hac vice)
dkavouras@bakerlaw.com
Kendall C. Kash (pro hac vice)
kkash@bakerlaw.com
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
T: 216.861.2000

*Counsel for Athena Bitcoin*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 23, 2025, a true and correct copy of the foregoing was served electronically on all counsel of record by electronic filing via the Court's CM/ECF system.


/s/    *Elizabeth A. Scully*
Attorney for Athena Bitcoin, Inc.