UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
PAULA XINIS
UNITED STATES DISTRICT JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MD 20770

February 27, 2026

Re:   25-cv-1318, *Reynolds v. Athena Bitcoin, Inc. et al.*

## LETTER ORDER

Pending is Defendant Athena Bitcoin, Inc. ("Athena")'s motion to dismiss Plaintiff Diane Reynolds ("Reynolds")' class action Complaint. ECF No. 18. For the following reasons, the motion is denied without prejudice because this Court lacks jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

This action arises from a fraud scheme involving elderly victims duped into depositing funds in Athena's crypto-currency ATM machines. ECF No. 2. According to the Complaint, a third-party "scammer" first "places the victim under duress by threatening dangers that require urgent action to protect the victim's physical or financial well-being," then convinces the victim to deposit cash into an Athena crypto-currency ATM if the victim wishes to avert the threatened harm. ECF No. 2 ¶ 11. The Athena ATM next converts the dollars deposited into untraceable cryptocurrency and transfers the currency to a "secure" Bitcoin wallet. *Id.* The scammer, in turn, sends the victim a QR code generated by the transaction, and instructs the victim to hold the QR code up to the ATM camera. The QR code is embedded with the scammer's Bitcoin wallet address, causing the converted Bitcoin currency to be deposited into the scammer's online Bitcoin wallet. *Id.*

Based on this, Reynolds, individually and on behalf of similarly situated elderly victims, filed a five-count class action Complaint in Montgomery County Circuit Court against Athena. ECF No. 2. Athena timely removed the case to this Court, asserting jurisdiction under CAFA. ECF No.1. Athena next moved to dismiss the Complaint for lack of sufficiency pursuant to Federal Rule of Civil Procedure 12(b)(6). But in reviewing the motion to dismiss, the Court cannot satisfy itself, as it must, that it retains subject matter jurisdiction pursuant to CAFA.

A federal court is one of limited jurisdiction, hearing only those cases for which the Constitution or Congress has conferred authority. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Through CAFA, Congress expanded federal subject matter jurisdiction in the class action context to reach "'interstate' class actions 'of national importance.'" *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 329 (4th Cir. 2019) (quoting CAFA, Pub. L. No. 190-2, § 2(b)(2), 119 Stat. 4, 5 (2005)). CAFA confers federal jurisdiction over a "class action"

when (1) the parties are minimally diverse; (2) the amount in controversy exceeds $5,000,000; and (3) the proposed class has at least 100 members. 28 U.S.C. § 1332(d).

Because CAFA aims to "facilitate adjudication of certain class actions in federal court," the Court does not employ the same "antiremoval presumption" accorded cases invoking the Court's general diversity jurisdiction. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Thus, the Court must read CAFA's jurisdictional provisions "broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* (quoting S. Rep. No. 109-14, at 43 (2005)). Nonetheless, when the Complaint facts of a removed case do not make plausible the existence of CAFA jurisdiction, then the Court lacks constitutional standing to adjudicate the case, and must remand the matter to state court. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016); 28 U.S.C. § 1453(c)(1) ("Section 1447 shall apply to any removal of a case under [CAFA], except . . . section 1447(d) . . . ."); *see also Me. Ass'n of Interdependent Neighborhoods v. Comm'r, Me. Dep't of Human Servs.*, 876 F.2d 1051, 1053–54 (1st Cir. 1989).

CAFA jurisdiction must rest on "enough facts to allow a court to determine—not speculate—that it is more likely than not that the class action belongs in federal court" and must "provide enough factual detail for the district court to discharge its constitutional duty and assess whether jurisdiction exists." *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 197 (4th Cir. 2017). *See also Brennan v. Stevenson*, No. JKB-15-2931, 2015 WL 7454109, at *6 (D. Md. Nov. 24, 2015) ("Courts may not engage in conjecture, speculation, or judicial star gazing to determine jurisdiction."); *Caufield v. EMC Mortg. Corp.*, 803 F. Supp. 2d 519, 527 (S.D.W. Va. 2011) ("In order to demonstrate a basis for federal jurisdiction, the party seeking removal must present facts rather than speculation.").

To satisfy CAFA, Athena points to the Complaint facts. As for the class size, the Complaint defines the class as "[a]ll Marylanders 68 and older, currently living or deceased, who were victims of a financial scam involving an Athena ATM from February 6, 2020 to the present," which "at a minimum" includes "several dozen Maryland seniors." ECF No. 2 ¶¶ 71, 74. From this, Athena contends that the class "*likely* includes over 100 putative class members." ECF No. 1 at 4 (emphasis added). Additionally, Athena claims the amount in controversy exceeds $5 million because Reynolds "alleges that her actual damages are $13,000, and seeks treble damages, which would put her damages at $39,000." ECF No. 1 ¶ 24; ECF No. 2. Athena next "assumes" a class of only "150 individuals" and simply multiplies Reynolds' damages by 150 to arrive at $5,850,000. *Id.* Because Athena assumes far more than the Complaint provides, the Court cannot agree that CAFA jurisdiction exists.

First, with regard to the number of putative class members, the Complaint defines the class narrowly, as only Maryland residents 68 and older who are victims of the alleged scheme, estimating that the class *may* include "several dozen Maryland seniors." ECF No. 2 ¶ 74. But from this, it may be equally plausible as not that the class includes 100 members. The Complaint

2

provides no other facts from which the Court can infer a class size larger than 100 members. *See, e.g.*, *Franklin v. Cleo AI Inc.*, No. 1:24-CV-00146-JMC, 2025 WL 2532712, at *7 (D. Md. Sept. 3, 2025). Moreover, while Reynolds alleges that Athena "receives numerous reports of fraud per month," the Court cannot ascertain whether these reports involve the specific class of elderly plaintiffs or a broader swath of victims who fall outside the class. ECF No. 2 ¶ 50. Thus, without more, the Court cannot conclude that the putative class exceeds 100 members, and the mere "conclusory invocation" of CAFA will not suffice.

Even more problematic, the Complaint includes no facts to make plausible the class-wide amount in controversy exceeds $5 million. To satisfy the amount in controversy requirement, a court must begin by "multiplying the number of potential class members by the average damages each class member sustained." *Skipper v. CareFirst BlueChoice, Inc.*, No. CV DLB-21-1022, 2023 WL 2410858, at *3 (D. Md. Mar. 8, 2023). Certainly, Reynolds has pleaded *actual* damages of $13,000 arising from her individual deposit of that amount into an Athena ATM. But no facts make plausible that this deposit represents any sort of "average" for the other class members, or any facts which allow the Court to infer this amount is a reasonable approximation of what other putative class members would have deposited. Further, given the nature of this scheme, no facts make plausible that the amount deposited is generalizable in any meaningful way. Accordingly, it is wholly speculative to assign the identical loss amount that Reynolds experienced to every putative class member. *See Franklin*, 2025 WL 2532712, at *5 (explaining that the complaint fails to provide any facts regarding the average loss per class member necessary to satisfy CAFA).

Additionally, even if $39,000 per class member could represent a fair approximation of per-member damages, Athena next arbitrarily assumes that the class consists of at least 150 members to get to an amount exceeding $5,000,000. But nothing suggests that 150 is an accurate approximation. And Athena gives no real rationale based on the factual allegations as to why that number is factually plausible. Because no facts support the conclusion that the class consists of 150, let alone 101, class members, the jurisdictional amount-in-controversy is not satisfied. *See Scott*, 865 F.3d at 196.

Because this Court lacks CAFA jurisdiction, it cannot review the merits of Athena's motion. The motion to dismiss under Rule 12(b)(6) is thus denied without prejudice. That said, the Court recognizes that it has reached the question of jurisdiction sua sponte. And while the Court can and must satisfy itself that jurisdiction is proper, the Court also will give the parties an opportunity to be heard on this question.

Accordingly, the Court will hold a **recorded status conference on March 13, 2026 at 2:00 p.m.** to discuss next steps, including whether the parties wish to brief the question of CAFA jurisdiction or instead agree that remand is warranted. Dial-in instructions will be provided by separate order.

      Although informal, this correspondence constitutes an Order of the Court and shall be docketed as such.

                                       Sincerely,

                                        /s/

                                       Paula Xinis
                                       United States District Judge